**William W. SELLERS, the Sellers Company, Inc. and Sellers Service, Inc.**

v.

**TIME INC.**

**Civ. A. No. 40373.**

United States District Court
E. D. Pennsylvania.
May 12, 1969.

Duane, Morris & Heckscher, Henry T. Reath, William S. Ayres, Philadelphia, Pa., for plaintiffs.

Wilbur H. Haines, Jr., Philip H. Strubing, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant; Alan J. Hruska, Edward O. Byrne, Cravath, Swaine & Moore, New York City, of counsel.

584

## OPINION

KRAFT, Judge.

This is defendant's motion to dismiss and for summary judgment in this action for damages arising out of an alleged libel which appeared in an article published in "The Law" section of defendant's magazine on May 6, 1966. The article reads as follows:

### "NEGLIGENCE"

'Duffer's Dilemma

'William Sellers runs a heating-equipment company near Philadelphia, and *he plays golf for business rather than pleasure.* One June day in 1964, *Sellers' game was running true to form* at the Manufacturers Golf and Country Club in Oreland, Pa. At the third tee, *his mind on a potential deal,* Sellers *hit the ball so awkwardly that it flew to the rear and struck one of his partners,* James Walsh, sales manager of the tank division of Bethlehem Steel in Dunellen, N.J., As a result. Walsh was blinded in his left eye.

'*Since Sellers was working while golfing* Walsh sued both him and his company for $250,000 claiming that Sellers had negligently failed to wipe his hands before swinging, causing the club to slip. In answer. Sellers moved to have the suit dismissed on a seemingly unassailable ground: anyone who ventures on a golf course 'assumes the risk of being struck by a ball' and is thus barred from seeking damages.

'To everyone's surprise, Sellers' motion was shot down by Judge Alfred Luongo of the Philadelphia U.S. District Court, which had jurisdiction because Sellers and Walsh live in different states. Judge Luongo readily agreed that every golfer 'assumes the risk or is guilty of contributory negli-

gence if he intentionally or carelessly walks ahead or stands within the orbit of the shot of a person playing behind him.' *But when the ball struck Walsh, said the judge, he was sitting in a golf cart 20 ft. to Sellers' rear*—a place of supposedly perfect safety. As a result Walsh cannot be said to have 'voluntarily assumed the risk' of being partly blinded. Ruled the judge: *Duffer-Defendant Sellers must stand trial."* (The above italicized excerpts represent the alleged defamatory portions of the Article)

In their complaint, plaintiffs, in part, allege that the article " * * * is replete with statements that are false, misleading, or flip, which defame Plaintiff by holding him up to public ridicule as a stupid, awkward and incompetent person and portrays him as a crass, materialistic, selfish and thoughtless businessman, interested in nothing in life but business. * * *"

Additionally, plaintiff and his corporations complain that the article defames their position in business and has subjected them to public disgrace by portraying plaintiff " * * * as one who has traded solely on personal and social friendships and relationships as a means of advancing his own business interests and career to the exclusion of all other factors."

▆ Apart from defendant's contention that the article is not libelous, Time argues that: " * * * even assuming, contrary to fact, that the article were susceptible of a defamatory meaning, it is privileged under the common law rule of a fair report of judicial proceedings * * *"[1] and under the constitutional privilege[2] accorded to publications touching upon public issues or matters of public concern which has developed since its promulgation in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11

---

1. Defendant's pre-trial memorandum page 2.

2. In order to overcome this privilege plaintiff must prove with "convincing clarity" that the statement was false and that it

was made with knowledge of its falsity or in reckless disregard of whether it was false or true. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

L.Ed.2d 686 (1964); Time Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Curtis Publishing Co. v. Butts and Associated Press v. Walker, (together) 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); United Medical Laboratories, Inc. v. Columbia Broadcasting Systems, Inc., 404 F.2d 706 (9 Cir. 1968), cert. denied 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (March 24, 1969); Bon Air Hotel, Inc. v. Time, 295 F.Supp. 704 (S.D.Ga.1969).

Plaintiffs do not dispute the public interest in the decision of this Court in Walsh v. Sellers.[3] However, they claim that the aforesaid privileges were lost because of the improper way in which Time unfairly and inaccurately portrays plaintiff in a "slanted", "smart alecky" and "flippant" manner with a reckless disregard of the actual facts caused by defendant's failure to properly check out the story.

■ After argument and careful consideration of the motion, with its attached materials, the article and the pertinent law, it is the opinion of the Court that the article comes within the common law and constitutional privileges previously set forth.

■ We disagree with the plaintiff's contention that the article loses its privilege by reason of the alleged "flippant" and "smart alecky" style of writing which was utilized by Time to create reader interest. Even such a respected periodical as United States Law Week, sometimes adds "color" to enliven an otherwise routine and dull account of a legal decision.[4]

The Time article, read as a whole, fairly reports the result of Judge Luongo's decision. Plaintiff argues that Time's failure to explain to its readers the legal effect of a motion for summary judgment, whereby the facts must be construed in the light most favorable to the party opposing the motion, gave the readers of the article the false impression that Sellers did not dispute the claim that he did hit the ball to the rear, when that allegation was, in fact, a contested issue.

We think this objection is not well taken. It was Sellers himself, by his mo-

---

3. The decision, C.A. 37838, was summarized and reprinted in the April 19, 1966 issue of United States Law Week. This article came to the attention of the editor of the Law Section of Time.

4. Compare the following article reported in the April 15, 1969 issue of Law Week:

"Grandpa Must Pay Tax Bill On Grandson's Horse Hobby

A kindly old grandfather who sold his 10-year-old grandson a horsie, or at least a piece of one, is slapped by the U. S. Court of Appeals for the Sixth Circuit with a $37,000 tax bill on the horsie's winnings at grown-up places like Arlington Park. (Greer v. United States, 6 Cir., 408 F.2d 631, 3/21/69).

The grandfather insisted that only after the 10-year-old called him and asked to buy a 'racing interest' in the horse—Ridan—did he sell a one-fifth piece of the action to both the boy and his five-year-old brother for $550 each. The precocious tykes may have had one eye on the racing form, since on the day of the transfer the horse was the odds-on favorite to win a $127,000 race three days later. He won it, and kept on winning for two more years, and the court just

can't quite call the whole affair an arms'-length deal.

The grandfather didn't really make a bona fide sale of income-producing property in the court's opinion, because the consideration was inadequate. The $550 may have represented one-fifteenth of the horse's depreciated book value, says the court, but he had already won his first four races and was insured for $100,000.

The taxpayer doesn't fare any better in trying to convince the court to allow capital gains treatment for insurance proceeds on a foal that only lived five days. The foal was carried by its dam for 11 months, the court observes, but it wasn't held by the owner for more than six months within the meaning of the statutory requirement. 'It is not enough to conjure up a hypothetical course of dealing in unborn foals' to satisfy the standard. Besides, the court adds, reductio ad absurdum is clearly applicable: suppose the mare miscarried seven months after conception, but four months before birth. A foetus may be aborted, but it isn't depreciated in the eyes of the court, even if it was an en ventre sa mere for over six months" (Page 2575) (emphasis ours).

tion for summary judgment under Rule 56, who asserted that there was no genuine issue as to any material fact, and who thereby admitted, for the purpose of that motion, that he did hit the ball to the rear, but claimed that the plaintiff was barred from recovery by the legal defense of assumption of risk.

In the posture of the legal proceedings in Walsh v. Sellers at the time of the motion for summary judgment, this allegation became an admitted fact and Time was entitled so to report it.

■ The two outstanding points of reader interest in the article are the unusual flight of the ball and the legal decision that the defense of assumption of risk was inapplicable under the particular facts. We think this decision qualifies as a matter of public interest and comes within the New York Times rule requiring the plaintiff to prove "actual malice" on the part of the defendant.

The supporting affidavits attached to the motion together with the depositions and answers to interrogatories, manifestly demonstrate the complete lack of any knowledge of the falsity of the article or reckless disregard of the truth on the part of Time's employees. The plaintiff has submitted no affidavits to the contrary and, so, has failed to offer evidence of the existence of any genuine issue of actual malice.

We find that the portions of the article heretofore italicized are substantially accurate, and, while in a flippant style, are unlikely to have effect on any average reader's impression of the plaintiff's character.

■ Plaintiff has admitted in his depositions that he plays golf occasionally and shoots in the 100 to 105 range, which reasonably puts him in a "duffer" category. The term "duffer" was a fair comment and imports no defamatory meaning. Plaintiff further admitted that he was on a business outing, and that his intent in playing golf that day was to further the profits of the Sellers' Company Inc.

Additionally, plaintiff imputes a defamatory meaning to statements in the article which allegedly infer that plaintiff was "crass", "thoughtless", "stupid" and thereby "wilfully" struck his partner with the errant shot.

■ We are not persuaded that such a tortured construction of the fair and accepted meaning of the statements [5] can be squared with ordinary common sense. Such language could only offend a person of the most highly developed sensibilities. The fact that Time could not know what was on Sellers' mind when he hit the shot does not render Time's conclusion defamatory.[6] " * * * Such a statement is merely an expression of the opinion of him who makes it. Its truth or falsity is probably not even susceptible of proof." [7]

■ In the present sophisticated age of business, the ordinary reader of Time would not impute a defamatory meaning to a statement that a businessman was playing golf for business rather than pleasure. It would strain our credulity to believe that the average reader of defendant's magazine would infer that plaintiff "willfully" caused the ball to take its erratic flight to the rear to injure his partner, who, he hoped, would be favorably disposed to recommend his products. At most, the article portrayed the plaintiff as being the perpetrator of a single careless act, which is not actionable. Flores v. Mosler Safe Co., 7 A.D.2d

5. "At the Third Tee, His Mind on a Potential Deal, Sellers Hit the Ball So Awkwardly That It Flew to the Rear and Struck One of His Partners, James Walsh * * *. As a Result, Walsh Was Blinded in His Left Eye."

6. " 'Errors of fact, particularly in regard to a man's mental states and processes, are inevitable. * * * ' " New York Times Co. v. Sullivan, supra at p. 272 of 376 U.S., at p. 722 of 84 S.Ct.

7. Crosby v. Rockland County Citizen Publishing Co., Sup., 232 N.Y.S.2d 819, aff'd. Crosby v. Reilly, 20 A.D.2d 561, 246 N.Y.S.2d 59 (2d Dept. 1963).

226, 182 N.Y.S.2d 126 (3d Dept.) aff'd. 7 N.Y.2d 276, 164 N.E.2d 853 (1959).

■■ Accordingly, we conclude that defendants' motion should be granted. However, because there are serious constitutional questions involved in this case which should be reviewed by the Court of Appeals in the interest of improving the administration of justice, we will direct that plaintiff's complaint also be dismissed, so that our order will be a final judgment and therefore subject to appeal. Poss v. Lieberman, 299 F.2d 358, 359 (2 Cir. 1962) cert. denied 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962).