Frank RAGANO, Plaintiff,

v.

TIME, INC., a New York corporation, Defendant.

No. 66–397 Civ. T.

United States District Court
M. D. Florida,
Tampa Division.

Aug. 8, 1969.

William E. Bufalino, Detroit, Mich., Raymond E. LaPorte, Tampa, Fla., Paul A. Louis, Sinclair & Louis, Bertha Claire Lee, Miami, Fla., Melvin M. Belli, Belli, Ashe, Gerry & Ellison, San Francisco, Cal., for plaintiff.

Frates, Fay, Floyd & Pearson, Miami, Fla., Cravath, Swaine & Moore, New York City, for defendant.

## OPINION AND ORDER ON SUMMARY JUDGMENT MOTIONS

KRENTZMAN, District Judge.

Plaintiff, Frank Ragano, brought this diversity action seeking compensatory and punitive damages from the defendant, Time, Incorporated, for an allegedly libelous characterization published in the People section of defendant's magazine that went to press October 1, 1966. After much discovery had taken place and after various rulings in this cause, pretrial and trial dates were set. Time, Incorporated filed its motion for summary judgment and other relief on the 24th day of June, 1969. Having heard the arguments of counsel and having considered the exhibits, depositions, affidavits and memoranda on file in this cause, the Court has denied the defendant's motion for summary judgment and now enters its opinion and order thereon.

### THE FIRST AMENDMENT DEFENSE URGED BY TIME

■ The defendant, Time, Inc., hereinafter referred to as "Time", again has moved for Summary Judgment on its defense of privilege which is grounded on the First Amendment protections of speech and press. In presenting this argument attention was initially focused on the question of whether or not the plaintiff, by virtue of his status, occupation, or the circumstances surrounding the event reported could be considered as being a person whose activities might be viewed as matter of "public interest" or "public inquiry." The plaintiff has conceded, during the hearing, that the matters and circumstances attendant upon representation of his client in the New York proceedings did in fact place him in the public light. Even in the absence of such an admission the Court could, and does now, determine that by being involved in a matter of such public significance and attention as these grand jury proceedings the plaintiff's conduct has become a matter wherein the First Amendment immunity may be claimed by the publisher.[1]

1. The Court's conclusion is based on the development in the law on this question first sparked by the Supreme Court in

N. Y. Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Though that case dealt with a "public

This determination having been made, it is necessary to briefly mention the protection afforded the publisher by the decisions of New York Times v. Sullivan,[2] and those that have followed.[3] The latest and most succinct statement of the scope of the publisher's privilege is found in St. Amant v. Thompson, 390 U.S. 727, at page 731, 88 S.Ct. 1323, at p. 1325, 20 L.Ed.2d 262 (1968) wherein the Court stated:

> * * * [R]eckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.* (Emphasis supplied).

Decisions from *N. Y. Times* through *St. Amant* have sought to strike the delicate balance between "the stake of the people in public business and the conduct of public officials"[4] on the one hand and the equally important rights of the individual to preserve his reputation from groundless assaults via defamatory publications or through invasion of rights of privacy. In seeking to achieve this balance the law today affords immunity to the publisher who erroneously relates *facts* as well as opinion so long as the state of this actual knowledge falls within the *St. Amant* standard.[5] It is Time's contention that this expanded immunity allows the publisher to substitute journalistic opinion in place of facts known by him to be contrary to that opinion. The question before the Court is whether such a substitution or omission of fact may be made where the publication does not in some manner indicate that viewpoint rather than fact is being related. It is the Court's view that such actions may be considered as reckless disregard for the truth and therefore not entitled to the First Amendment protections.

The teachings of *N. Y. Times* and the later cases are grounded upon the grave public interest in the rapid dissemination of news and views on matters of public concern. Incidental to this paramount recognition of the

official" the subsequent cases have applied its principles to include other persons and matters wherein public attention and interest required the publisher's protection to be expanded. Among the more illustrative of these cases are: Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Associated Press v. Walker, id. (Companion case); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) case limited to holding on invasion of privacy; United Medical Laboratories v. CBS, 404 F.2d 706 (9 Cir. 1968), cert. den. 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); Time Inc. v. McLaney, 406 F.2d 565 (5 Cir. 1969) cert. den. 395 U.S. 992, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969).

2. Cited fully in footnote 1, supra.

3. It is not necessary in the scope of this opinion to debate the pros and cons of the "actual malice" requirement of N. Y. Times and its implications. See: The separate views of the Justices in Curtis Publishing v. Butts and Associated Press

v. Walker, cited note 1, supra; Note, The Expanding Right to Criticize; A Post Times Analysis, 19 U.Fla.L.Rev. 700, 718–19 (1967).

4. St. Amant v. Thompson, reciting the basis of the constitutional protection from *N. Y. Times* through *Garrison, Rosenblatt, Butts, Walker, Hill & St. Amant* without specifically referring to the intervening cases.

5. Prior to the *N. Y. Times* decision the law of defamation recognized the defense of "fair comment" where the article referred to a matter of public interest or concern. In a majority of the states, however, the " * * * privilege of public discussion is limited to opinion, comment, or criticism, and does not extend to any false assertion of fact." Prosser, Handbook of the Law of Torts, § 110 p. 814 (3d ed. 1964). See also: Noel, Defamation of Public Officers and Candidates, 49 Colum.L.Rev. 875 (1949) and Comment, Calculated Misstatements of Fact not Protected by First Amendment Guarantees of Free Speech and Press. 1969 Utah L.Rev. No. 1 pp. 118, 119.

**1008**

need to rapidly air public issues the law recognizes that there will always be some erroneous expression of both fact and opinion.[6] The publisher is not required to hold up his press until affidavits are secured or until all the results are in.[7] He is subject to liability, however, where he has actual knowledge of falsity or grave doubts as to the truth of his publication.[8]

[3] In the present case the depositions and exhibits reveal that the article in question was researched and composed from newspaper accounts of the proceedings and from Time's "bio" files.[9] In all of these reference materials the plaintiff was referred to as an attorney. Everyone on Time's staff connected with the preparation of the article knew that the plaintiff was an attorney. In the first draft of the article, Mr. James referred to the lawyers as "mouthpieces." Mr. Daniels, a senior editor, rewrote the story and deleted the indication that the plaintiff was a lawyer. The article was then published with the photograph.

The publication referred to three individuals by name and mentioned ten other "bigwigs." The group was characterized as being a "meeting even bigger than Appalachian of top Cosa Nostra hoodlums * * *." Although over a

week had passed between the luncheon during which the alleged meeting took place and the luncheon where the photograph was taken, this was not revealed by the article. Indeed, the article was written to create the impression that all of the events it refers to transpired in the same day.[10] As stated previously, there was no mention of the fact, actually known by Time, that two of the persons photographed were attorneys. In sum, the article talks of a luncheon gathering of thirteen Cosa Nostra hoodlums and is accompanied by a photograph of seven people as illustrative of the language employed in the article.

In support of the contention that this publication is protected Time submits that its staff held an honest and good faith belief that, under the circumstances and events surrounding the taking of the photograph, the attorneys had forfeited their rights to be referred to as attorneys and could be considered as "Cosa Nostra hoodlums."[11] It is contended that, in having this state of mind, the defendant cannot be considered to have had "serious doubts as to the truth of its publication."[12]

The validity of this position must rest upon the broad assumption that the law no longer recognizes distinctions be-

6. In Ross v. Gore, 48 So.2d 412 (Fla. 1950) Justice Roberts elaborating on the balance to be struck in this area referred to Thomas Jefferson's statement that "some degree of abuse is inseparable from the proper use of everything; and in no instance is this more true in that of the press."

7. The usual high degree of care exercised by writers and editors in most instances is reflected by the research which is undertaken before publication. See, Time v. McLaney, cited Footnote 1, supra.

8. St. Amant v. Thompson, cited in Footnote 4 above.

9. Exhibits to depositions of Serena Rachels, Timothy James, George Daniels, and John F. Dowd taken in the case of Wasserman v. Time on January 17, 1967, and filed in this cause upon stipulation of counsel. See, in particular, Exhibit 2, Tab 2, for the various newspaper accounts and Additional Editorial Reference file folder (the bio file), Tab B.

10. Depositions indicate that the article and photograph were viewed by Time as being one, continuous transaction. See, depositions of: Serena Rachels, p. 28; Timothy James, pp. 52, 62–63; George Daniels, pp. 76–78; John F. Dowd, pp. 99–100. The deposition of Otto Fuerbringer, a Time Vice President, viewed the article as reciting the events as having occurred in the space of a single day; See page 72 of that deposition.

11. Deposition testimony of Serena Rachels pp. 32–33; Timothy James pp. 52, 53, 61–63; George Daniels p. 76; John Dowd pp. 100–101. See also, defendant's memorandum in support of motion to vacate and alternative relief, filed June 24, 1969, pp. 20–23; Transcript of hearing on motion, pp. 18–24.

12. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

tween assertions of facts and statement of opinion. This assumption may be well grounded on the authority of sweeping language used in leading cases and the views of distinguished writers, nevertheless, the Court cannot accept the proposition that the distinction may now be totally disregarded. While the protections of the First Amendment are available to the publisher whether he writes in terms of fact *or* opinion, the immunity cannot be extended to allow unlimited substitution of views or conclusions, whether grounded in honesty and good faith or otherwise, in the place of known facts where the publication does not indicate to the reader that such a substitution has been made.

Free, open and robust discussion is indeed essential and encouraged for the maintenance of our democracy, however, constitutional guarantees are never regarded as absolutes. Discussion and debate can hardly be healthy where the public is not afforded the opportunity to weigh all the facts in arriving at its conclusion. In matters where the character and reputation of an individual is at stake, the grievousness of the situation is compounded. In such a case, both the public and the individual come out losers.

While not attempting to limit the principles here set out to situations where the plaintiff is an attorney, the legal profession may be considered as illustrative of the consequences in upholding the position urged by Time. Time's contention to the effect that:

"While knowing the plaintiff to be an attorney, if the publisher has an honest and good faith belief that he may be journalistically considered a hoodlum, the publisher may then factually characterize the plaintiff as a hoodlum and claim First Amendment protection,"

cannot be afforded judicial sanction within the framework of a constitution which is grounded on the presumption of innocence and where the concept of guilt by association is denounced. Failure to delineate fact from opinion in such a characterization would have a deterrent effect upon the availability of attorneys to represent persons accused of crime and could foreseeably result in frustrating the constitutional rights of an accused to secure services of counsel of his choice.

The Court is by no means saying that the First Amendment immunity is available only where the publication sets out its views on a separate page or in segregated columns, but rather, holds that some indication must be given to the reader or listener. The protection is unavailable where known facts are deleted from "a very factual story" [13] in furtherance of the publisher's policy of writing pungently, provocatively, succinctly, and without separating fact from opinion.[14]

The view held by Time's staff that the second luncheon was staged as a gesture of disdain and contempt for the law [15] would be entitled to First Amendment protection if it were represented for what it actually is—opinion or viewpoint. In jumping the gap by choosing to relate this characterization as a matter of fact the protection was lost. In making this choice, Time took the risk * * * that it might go too far. Pape v. Time, Incorporated, 318 F.2d 652, 655 (7 Cir. 1963); after remand, 354 F.2d 558, 560 (1965).

Although it is not necessary that the publisher be wholly objective or that opinions or views be set out in separate pages or columns he must, however, give some notice to his readers when he embarks on a course of substituting opinion in place of known facts. In the present case Time could have simply met this requirement by stating that the plaintiff

---

13. Deposition of Otto Fuerbringer, pp. 70–73.

14. Deposition of Otto Fuerbringer, pp. 13–14, 70–71

15. See, references in Footnote 11, supra; Memorandum in support of motion filed June 24, 1969, p. 23; Transcript of hearing on motions July 10, 1969 at pp. 22–26.

was an attorney or that Time *considered* him to be a hoodlum. Admittedly, journalistic flair and pungency might have been sacrificed, but the law of defamation is not grounded on considerations of whether or not the article in question provides provocative or entertaining reading.

As of this writing Time has moved successfully for summary judgment in five other libel cases brought throughout the country.[16] This fact is quite significant in illustrating the plaintiff's burden in such cases. Perhaps in no other area of civil litigation is the burden so ominous as in the law of defamation. To survive summary judgment proceedings it is necessary that he offer some evidence upon which a jury could find convincing clarity [17] of actual malice or reckless disregard. The decisions require that he come forward with evidence of the defendant's state of mind; in effect, he must prove a negative. There must be " * * * sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts." [18] The standards enunciated, however, were all set forth in cases where the defendant had no actual knowledge of falsity. Under those circumstances the publisher's position was supportable. The present case differs, however, because Time had actual knowledge of the fact that the plaintiff was an attorney yet decided to disregard or omit this fact. The First Amendment does not require that the plaintiff show knowledge of falsity and then, as Time contends, bad faith in the publisher's choice of disregarding the truth. Where the plaintiff presents evidence to show that the publisher chose to substitute his opinion for facts actually known by him in an article that is capable of a defama-

tory meaning he has come forward with sufficient evidence to show reckless disregard.

The Court has found no authority on the question of whether or not characterization of an individual as a "top Cosa Nostra hoodlum" is libel per se, however for purposes of dealing with the matters raised in the cross motions for summary judgment it is only necessary that the Court determine whether or not the characterization is reasonably capable of a defamatory meaning.[19] The Court determines that such a characterization is reasonably capable of such a meaning affecting the plaintiff both individually and in his profession. It shall be for the jury to determine whether the article is in fact understood as defamatory.

These determinations having been made, it is therefore,

ORDERED and ADJUDGED:

1. That the motion for summary judgment filed on behalf of the defendant, Time, Incorporated, be and the same is hereby denied.

2. The defendant's application for certification pursuant to Title 28, U.S.C. § 1292(b) is considered by the Court to be appropriate in that this order does involve a controlling question of law as to which there is substantial grounds for difference of opinion and a prompt appeal may materially advance the ultimate determination of the litigation.

3. An application for an interlocutory appeal shall operate as a stay of further proceedings in this Court if said application is timely filed. In the event that no such application is filed this cause shall be re-scheduled for pretrial conference and trial.

---

16. Bon Air Hotel, Inc. v. Time, Inc., 295 F.Supp 704 (S.D.Ga.1969); Time v. McLaney, 406 F.2d 565 (5 Cir. 1969); Sellers v. Time, Inc., 299 F.Supp. 582 (E.D.Pa.1969); Wasserman v. Time, Inc., No. 2925–66, unreported, (D.C.1969); and Firestone v. Time, No. 68–C–977, unreported, (15 Jud.Cir.Fla. 1968).

17. N. Y. Times v. Sullivan, 376 U.S. 254, 286, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

18. St. Amant v. Thompson, Footnote 12, supra.

19. Belli v. Orlando Daily Newspapers, 389 F.2d 579 (5 Cir. 1967).