262 So.2d 698 (1972)
Victor NIGRO et al., Appellants,
v.
The MIAMI HERALD PUBLISHING COMPANY, A Florida Corporation, and Miami Daily News, Inc., a Florida Corporation, Appellees.
Nos. 71-957 - 71-959, 71-961.
District Court of Appeal of Florida, Third District.
May 23, 1972.
Rehearing Denied June 19, 1972.
James O. Nelson, Miami, for appellants.
Paul & Thomson, Daniel Neal Heller, Miami, for appellees.
*699 Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
HENDRY, Judge.
Appellant-plaintiffs, Victor Nigro, Thomas Nigro, Vito La Bruzzo, Jr. and Andrew Danella, seek review of the separate adverse final summary judgments in favor of defendant-appellees The Miami Herald Publishing Company and the Miami Daily News, Inc. We affirm.
On February 26, 1971, the appellants filed separate complaints alleging that they were libeled. The libels were allegedly contained in newspaper articles. The Miami Daily News published articles relating to the activities of the plaintiffs. These news items referred to the group of persons who flew to Miami from Kansas City, Missouri and who were handed federal grand jury subpoenas at the airport as: "top members of the Mafia," and "Cosa Nostra men" who were flying to Miami to meet with the persons taking over from the late "Mafia boss Vito Genovese." The article of March 1, 1969, further states: "Another 11 men accompanying them were described by federal sources as friends and business associates of known Midwest Mafia figures... ." The Miami Herald also published articles relating to the activities of the plaintiffs. The Herald reporters described the group of persons arriving at the Miami airport as: "Cosa Nostra members and their associates," and as "henchmen" of midwestern Mafia leaders. One Herald article reported Vito La Bruzzo's denials of any Mafia affiliation.
The appellants state that they are residents of Jackson County, Missouri and operate legitimate businesses there. They explain that they have never been involved in any criminal activity and that they came to the Miami area only for a golfing holiday.
The Miami Herald on July 14, 1969, reported that eleven named individuals  including appellants  were "not members of the Mafia." The same article repeated that their "four companions have been identified by Federal organized crime agents as members of the Kansas City Mafia."
The four libel actions were not consolidated at the trial level, but they have been consolidated for appellate purposes.
The appellants contend: The trial court erred in ruling as a matter of law that there was no genuine issue of material fact, and in granting final summary judgment for defendants. The appellants rely on such cases as Time, Inc. v. Ragano, 427 F.2d 219 (5th Cir., 1970).
The appellees primarily contend that these instant cases fall within the constitutional privilege of New York Times v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and its progeny.
Starting with New York Times v. Sullivan, supra, the U.S. Supreme Court has considered the limitation upon state libel laws imposed by the constitutional guarantee of freedom of speech and of the press. Since that time the court has extended the protection to a variety of persons and news media. These include newspapers, magazines, a wire service, the State of Louisiana, a labor union, a defeated candidate for the U.S. Senate and a board of education. Those persons possessing the status of a public official or public figure or participating in an event of public interest similarly include: a retired Army General, a football coach, a court clerk, a state representative and a real estate developer, a candidate for tax assessor, a candidate for the U.S. Senate, a police official and a publisher of allegedly obscene books.
In each case the high court has held that the alleged libelous statement was privileged, absent actual malice and absent a reason to believe that the statement was false. More recently in Rosenbloom v. Metromedia, Inc. (1970), 403 U.S. 29, 40, 91 S.Ct. 1811, 29 L.Ed.2d 296, 310, the court forthrightly announced that the touchstone for determining whether the first amendment *700 applies to state libel actions is whether the contents involved concern an issue of public or general concern. The court left open the complete delineation of the reach of the determinant to future cases.
At the time of the publication of the allegedly libelous articles a key issue in national, state and local political contests was crime in the street. The full reach of the public's concern for the control of organized crime was beginning to be felt by the passage of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197 and Omnibus Crime Control Act of 1970, 84 Stat. 1880.
The proverbial ordinary man in the street, no less than the judiciary, would conclude that law enforcement activities directed to the control of organized crime concern an issue of public or general concern.
Our conclusion, that law enforcement actions and grand jury inquiries directed at actual or suspected organized crime activities fall within the classification "an event of great public interest" under the law of defamation, is based upon several recent cases, among them Time, Inc. v. Firestone, Fla.App. 1971, 254 So.2d 386, 388 which listed:
"Examples of events in the public interest, events where the public's right to know is superior to the individual's right to collect for damaged reputation include police raids for obscene books, organized crime, garbage pickups, pharmaceutical and laboratory testing, and the Master's Golf Tournament. Rosenbloom v. Metromedia, Inc., 1969, 3 Cir., 415 F.2d 892 [affirmed (1971), 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296]; Wasserman v. Time, Inc., 1970, 138 U.S.App.D.C. 7, 424 F.2d 920 [cert. den. (1970), 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273]; Arizona Biochemical Company v. Hearst Corporation, 1969, D.C.S.D.N.Y., 302 F. Supp. 412; United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., 1968, 9 Cir., 404 F.2d 706 [cert. den. (1969), 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454]; Bon Air Hotel, Inc. v. Time, Inc., supra [426 F.2d 858 (5th Cir., 1970)]." [Brackets added.]
In Rosenbloom v. Metromedia, supra, the petitioner conceded that a police campaign to enforce state obscenity laws was an issue of public interest. Mr. Justice Brennan, for the court, explained, 403 U.S. at 43, 91 S.Ct. at 1819, that:
"If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not `voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety."
Furthermore, there is no genuine issue as to any material fact concerning the actual malice of the reporters or publishers, and there is no genuine issue as to any material fact concerning the reporter's or publisher's reason to believe that certain statements were false in the allegedly libelous articles. The reporters relied upon statements and written material by U.S. Justice Department Task Force Officers that a planeload of Kansas City residents was composed of Mafia members and their friends. There was also no genuine issue of material fact as to the lack of knowledge by the publishers that the statements were false. Certain articles were justified under the "hot news" doctrine. All the articles met the criteria enunciated and approved in the cases above cited.
We have considered the record, briefs and arguments of counsel in the light of the controlling principles of law, and have concluded that no reversible error has been demonstrated. Therefore, for the reasons and upon the authorities cited and discussed, the judgment appealed is affirmed.
Affirmed.