231 So.2d 254 (1970)
J.D. HILL, Appellant,
v.
LAKELAND LEDGER PUBLISHING CORPORATION, a Corporation, Appellee.
No. 68-340.
District Court of Appeal of Florida, Second District.
January 30, 1970.
John Kaylor and Harry King, Winter Haven, for appellant.
Lawton Chiles, of Carr & Chiles, Lakeland, and Parker Thomson of Paul & Thomson, Miami, for appellee.
McNULTY, Judge.
This is a libel action in which appellant directly appeals from a summary judgment entered in favor of appellee, hereinafter called The Ledger. We affirm.
On October 31, 1966 The Ledger published the article which appellant claims is libelous. The pertinent portions thereof are as follows:
Chemical Sales to City
ATTORNEY GENERAL HOLDS EX-MAYOR VIOLATED STATUTES
"WINTER HAVEN  Former Winter Haven Mayor J.D. Hill was in criminal violation of Florida Statutes when a chemical firm of which he is president sold supplies to the city, according to information received by The Ledger from State Atorney [sic] General Earl Faircloth.
* * * * * *
Four invoices show that Engineered Chemicals sold a total of $273.75 in various chemicals to the city.
Since Hill is listed as president of the company, and was a city commissioner at the time of the purchases, his action appears to be in direct violation of Florida Statute 839.09.
Under the provisions of this law, Hill `shall be punished, upon conviction, by a fine not exceeding $500 or imprisonment not exceeding one year.'
THE STATURE [sic] was pointed out in an attorney general's opinion of Dec. 5, 1958, and it carries an underlined title:
`Boards not to Purchase Supplies from Member of Board.'
Section 839.09 reads in part:
`No state or county or municipal board or council shall purchase supplies, goods or materials for public use from any firm or corporation in which any member of such board is either directly or indirectly interested, nor shall any such *255 board pay for such supplies, goods or materials so purchased.'
* * * * * *
Hill is listed as president of the firm, and Robert C. Reiter is vice president.
* * * * * *
* * * The official minutes of the regular meeting of the city commission held Wednesday, February 16, 1966, showed that Reiter reimbursed the city for the $273.75 it had paid to Engineered Chemicals on the four different occasions.
* * * * * *
At this meeting Reiter returned to the city a check for $273.75 for the aformentioned [sic] city purchases.
Mr. Reiter stated he further wished to emphasize that Mayor Hill was unaware until a few hours ago that he (Reiter) had permitted sales totaling $273.75 to be made to the city. Mr. Reiter then presented a check to the city clerk.
* * * * * *
According to one prominent Winter Haven attorney due process of law would be for any interested taxpayer or citizen to present all accumulated information of Hill's apparent violation of Statute 839.09 to the county solicitor's office or take the information to a judge and attempt to secure a warrant for Hill's arrest.
The attorney cautioned that under due process, Hill may have been ignorant of the fact that the firm of which he was president was selling chemicals to the City of Winter Haven."
Now it is conceded by The Ledger that the headline and the first paragraph of the published article may be misleading and subject to "possible misinterpretation", because in truth and in fact the state Attorney General did not advise The Ledger that appellant himself specifically violated any statute; nor, admittedly, did the Attorney General rule in any manner on the specifics involving appellant. It is patent from the record that these statements were merely conclusions drawn by the authors of the headline and of the article, and resulted from a reading of an opinion rendered in 1958, by then Attorney General Ervin,[1] in which a hypothetical factual situation similar to the facts herein was determined to be a violation of § 839.09, F.S.A. A copy of that earlier opinion was forwarded by the present Attorney General's office to the author of the article in question here when the latter made inquiry during his investigation of the matters depicted in the article. So it may be said that insofar as the subject article suggests that the present Attorney General of Florida held appellant to be in criminal violation of law, it is false.
But the admitted truth is that appellant Hill was, during the critical times material herein, the President of Engineered Chemicals of Florida, Inc.; that while holding such office in said company he was also the Mayor and a City Commissioner of the City of Winter Haven; and that during his tenure as such Mayor and Commissioner the city purchased chemicals from the company of which he was President. This was, indeed, clearly contrary to the provisions of the aforesaid § 839.09, and may well have been a criminal violation thereof. Any ordinary, reasonable person apprised of such facts could not be faulted for coming to this conclusion; and appellant's contention that he was personally ignorant of such sales, and that the purchase monies were returned to the city upon discovery, does not justifiably militate against such a conclusion. The statute involved is one malum prohibitum, thus lack of scienter may not be a defense at all or it may bear only on mitigation of punishment. The legal niceties in this regard, however, cannot render unjustified an otherwise reasonable conclusion with which the true facts are *256 pregnant, i.e., that appellant was in violation of the statute.
It therefore appears that the only real difference between the complained-of article and the truth is the suggestion in the article that the Attorney General of Florida held appellant to be in violation of the statute. But from both the article and the truth an ordinary, reasonable person would come to the one conclusion that appellant was in violation of the statute; and the mere false suggestion that the state Attorney General also came to that conclusion does not make the article libelous. To so hold in this case would be, in effect, to say that it is actionable to falsely state that the Attorney General concluded from the facts herein the same as would any ordinary, reasonable person.
We conclude, therefore, that this case is controlled by our holding in McCormick v. Miami Herald Publishing Co.[2] We there stated:
"[4] A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. Greenberg v. Winchell, Sup., 136 N.Y.S.2d 877."
Applying this test, we find that if we eliminate the alleged falsities the article would not have produced a different effect, as the common mind would naturally understand it, than that which it produced with the falsities included. The false statements, as pointed out above, merely suggest that the Attorney General agrees. The true sense and meaning of the article remain essentially the same in either case, hence there is no actionable libel.
Accordingly, the judgment appealed from should be, and it is, affirmed.
Affirmed.
HOBSON, C.J., and MANN, J., concur.
NOTES
[1] 1957-58 Ops.Atty.Gen. 901, (No. 58-324).
[2] (Fla.App.2d 1962), 139 So.2d 197. See, also, Hammond v. Times Publishing Co. (Fla.App.2d 1964), 162 So.2d 681.