# FLETCHER v. FLORIDA PUBLISHING CO.

No. 73-3374 CA.

Circuit Court, Duval County.

January 4, 1974.

2

Ellis E. Neder, Jr. and Rudolph J. Inman, Jr., both of Jacksonville, for the plaintiff.

Harold B. Wahl of Loftin & Wahl, Jacksonville, for the defendant.

MAJOR B. HARDING, Circuit Judge.

*Summary final judgment:* The plaintiff has sued the defendant for trespass, invasion of privacy and intentional infliction of emotional distress. The court dismissed Count II of the complaint, seeking damages for an invasion of privacy, without leave to amend, and denied a motion to dismiss Count I seeking damages for trespass. The plaintiff filed an amended complaint adding a count III which seeks to recover damages for intentional infliction of emotional distress by the defendant. To Count III, the defendant has filed motions to strike and dismiss.

The defendant also filed a motion for summary judgment and at the hearing on all the motions, urged the court to rule on the motion for summary judgment and to consider, for such motion, that Count III states a cause of action. The court therefore deems said motions to dismiss and strike to be waived by the defendant. The matters alleged in Counts I and III have been answered by the defendant and said causes are at issue.

The court dismissed Count II of the complaint without leave to amend. It is abundantly clear to the court that there can be no recovery for an invasion of privacy by the publication of a true story of a matter of public interest which the court found exists here. There was no allegation of falsity of the matters alleged to have been published by the defendant. See Cason v. Baskin (Fla. 1947) 30 So.2d 635, 638; Jacova v. Southern Radio (Fla. 1955) 83 So.2d 34, at 40; Benson v. Florida Publishing (Fla. 1971) 262 So.2d 196, at 37 Fla. Supp. 157; Time v. Hill (1967) 385 U.S. 374; and Rosenbloom v. Metromedia (1971) 403 U.S. 29, at 43, 44, 48. Also, it is settled that one cannot recover for the alleged invasion of privacy of a deceased person, no matter how close the relationship of the deceased to the one seeking damages. See Cordell v. Detective Publications (C.A.6, 1969) 419 F.2d 989; 32 Fla. Jur., *Torts,* §10, 1973 Supplement; and Young v. That Was The Week That Was (C.A.6, 1970) 423 F.2d 265.

The court finds there is no real dispute as to the material facts. Mrs. Fletcher left Jacksonville for New York on September 15, 1972, to visit a friend. She left in Jacksonville her three young daughters, including seventeen-year-old Cindy. A "baby sitter" was to spend the nights with the children, but there was no one with them in the home during the daytime except a young man who had a room in the house and whom Mrs. Fletcher described as Cindy's "boy friend." On the afternoon of September 15, 1972, while Cindy was alone in the house, a fire of undetermined origin did large damage to the home, and Cindy died.

The fire and police departments were called by a neighbor who discovered the fire, but too late to save the child. A large group of firemen, news media representatives, and onlookers gathered at the scene and on Mrs. Fletcher's property.

When the fire marshal and Police Sergeant Short entered the house to make their official investigation, they invited the news media to accompany them, as they deposed was their standard practice. The media representatives entered through the open door; there was no objection to their entry; they entered quietly and peaceably; they did no damage to the property; and their entry was for the purpose of their news coverage of this fire and death.

The fire marshal desired a clear picture of the "silhouette" left on the floor after the removal of Cindy's body. He and Sergeant Short in their depositions explained that the picture was important for their respective investigations to show that the body was already on the floor *before* the heat of the fire did any damage in the room. The fire marshal took one polaroid picture of the silhouette, but it was not too clear, he had no further film, and he requested photographer Cranford to take the "silhouette" picture which was made a part of the official investigation files of both the fire and police departments.

This picture was not only a part of the investigation but news photographer Cranford turned it and his other pictures over to the defendant newspaper. It and several other pictures appeared in the news story of the Florida Times-Union on September 16, 1972.

As to Count I, the question raised by the motion for summary judgment is one of law as there is no genuine issue of material fact. The question raised is whether the trespass alleged in Count I of the complaint was consented to by the doctrine of common custom and usage.

The law is well settled in Florida and elsewhere that there is no unlawful trespass when peaceable entry is made, without objec-

tion, under common custom and usage. See Prior v. White (1938) 132 Fla. 1, at 19, 180 So. 347; Boston v. Fornalski (Fla. D.C.A.4, 1970) 234 So.2d 386, 387; 52 Am. Jur., *Trespass,* §39; 87 C.J.S., *Trespass,* §49b; Conley on Torts (4th Edition) §§251 and 248; Harper and James on Torts, § 1.11; and Restatement of the Law of Torts, §167 (d), *Trespass,* page 403.

In Martin v. Struthers (1943) 319 U.S. 141, 149, the court struck down as unconstitutional and "invalid in conflict with the freedom of speech and press" a city ordinance which made it unlawful trespass to knock on doors and ring doorbells to distribute literature. In so doing, at pages 47-149 it made the far reaching pronouncement followed by the Florida Supreme Court in Prior v. White (Fla. 1938) 132 Fla. 1, 180 So. 347, 356 —

> "Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. ***We know of no state which, as does the Struthers ordinance in effect, makes a person a criminal trespasser if he enters the property of another for an innocent purpose without an explicit command from the owners to stay away."

In McKee v. Gratz (1922) 262 U.S. 127, the Supreme Court recognized the rule that it was not trespass when under the "habits of the country" entry was commonly made.

A case which has just been decided illustrates the principles applicable here. See Cantrell v. Forest City Publishing Co. (C.A. 6, 1973) 484 F.2d 150. There plaintiff sued for $1,000,000 compensatory damages, plus another $1,000,000 punitive damages. The newspaper reporter and photographer, without permission, and while the plaintiff widow was away with only children at home, entered her home, took 50 pictures, and thereafter published a story and pictures to which plaintiffs objected. In paragraph 12 of her complaint, copy of which has been furnished the court, plaintiff alleged an "unwarranted trespass" on her property, without her consent, and in "deliberate and scornful disregard of the rights of plaintiffs to security of their persons, family and home, and their precious right of privacy." There, as here, the trespass was relied on as a basis for claiming damages for the publication.

There was no force used in the entry and no physical damage to the property. The publication complained of was a feature story which, in the words of the court, "placed the Cantrell family in a bad light because of its inaccuracies and untruths." It was a follow up on a bridge collapse where 44 persons lost their lives, including the deceased husband.

In *Cantrell*, the court ruled that the "judgment of what is newsworthy must remain primarily the function of the publisher," that there was no basis to hold there was no "newsworthiness," and that in the absence of "calculated falsehood" (See St. Amant v. Thompson (1968) 390 U.S. 728, 733) judgment must be entered for the defendant newspaper.

Not only did the fire marshal and Detective Sergeant Short testify it was common custom and usage to permit the news media to enter under the circumstances here, and of the great number of times they had permitted it in private homes, but many affidavits were filed to the same effect, including those of Duval County Sheriff Carson and Florida Attorney General Shevin.

Similar affidavits have been filed from the Chicago Tribune; the ABC-TV News, New York; the Tallahassee Democrat; the Pensacola Journal; the Associated Press; the president of the American Newspaper Publishers Association; the president of the Radio Television News Directors Association; the Miami Herald; United Press International; The Florida Times-Union and Jacksonville Journal; the Washington Post; TV-12 at Jacksonville; TV-10 at Miami; TV-4 at Jacksonville; the New York Daily News; the Milwaukee Journal; the Birmingham Post-Herald; the Memphis Commercial-Appeal; the Macon Telegraph; and the Tampa Tribune — all attesting that it is common usage, custom and practice for news media to enter private premises and homes under circumstances like those here.

Plaintiff filed no affidavits except her own; she makes no attempt to qualify as an expert; and she simply states her personal belief generally, without going into the situation involving coverage of a news story of public interest. She shows no qualifications to make an affidavit on the custom and usage in such matters.

In Mrs. Fletcher's deposition, she stated she was in New York at the time of the fire; there was no one at the scene who objected to the entry; and she makes it clear she does not contend there was any force used for entry, or any physical damage done to the premises.

Plaintiff likewise concedes that it was perfectly proper for the firemen and police to enter without permission. The firemen and police used the picture as part of their official investigation and actually requested that such picture be taken and would have made such request even had the plaintiff been there and objected. There is no evidence that any restriction was placed upon the defendant's photographer in the use of the photographs he took at the request of the police and fire marshal.

Numerous affidavits, as above set forth, have been filed by the defendant in support of its motion for summary judgment. All these affidavits attest to the fact that it is common usage, custom and practice for news media to enter private premises and homes to report on matters of public interest or a public event. The court therefore finds that there is no genuine issue of material fact and that as a matter of law an entry, that may otherwise be an actionable trespass, becomes lawful and non-actionable when it is done under common usage, custom and practice. The court further finds that the entry complained of in Count I of the complaint was one permitted by common usage, custom and practice, and that the defendant is entitled to a summary judgment as a matter of law as to matters alleged in Count I of the complaint.

As to Count III, the court must determine whether there is a genuine issue of material fact in which event defendant's motion for summary judgment will be denied. The matters alleged in Count III are similar to those in Count I except there are allegations that the course of conduct by the defendant's photographer was such as would not have been followed by a person of ordinary sensibilities. There were allegations of the wrongful viewing, inspecting and stepping over the child's body, wrongful taking of photographs and the wrongful publication of the story and photographs of the child's death, all of which it is alleged was done for the purpose of intentionally inflicting severe emotional distress upon the plaintiff and all of which was done wilfully, unlawfully, maliciously, and wantonly and intentionally to inflict severe emotional distress or with the knowledge that severe emotional distress was substantially certain to be suffered by the plaintiff.

There are no allegations that the story and photographs as published were false nor has there been any affidavit to controvert the defendant's affidavits that the photographer never saw the body of the child except as it was covered by a sheet as it was being removed on the stretcher nor the affidavit of the managing editor of the defendant's newspaper that the matter was handled in a routine way without personal animus, bias or prejudice against the plaintiff or knowledge of the plaintiff by the editor or to others handling the story. There was filed an affidavit by a practicing psychiatrist that a certain set of facts would have caused severe emotional distress.

There is no evidence by the depositions of the representatives of the sheriff's or fire department or otherwise that the photographer acted in any way other than lawfully or properly or interfered with their task in investigating the fire.

The court has previously determined that the fire was a matter of public interest. The only recovery in an action for invasion of privacy for the publication of a story about such a public interest

matter is where there is alleged and proved a calculated falsehood with the intent to harm through such falsehood.

While a story of public interest may have the effect of causing severe emotional distress or embarrassment to persons involved, the courts have consistently held that the public's right to know is of paramount importance. The media cannot be held to answer in damages for what others may call a breach of good judgment. The law is clear that only limited sanctions can be placed on the freedom guaranteed by the First Amendment. Even though the newspaper may anticipate that persons involved in the publication may suffer severe emotional distress, and desire money damages, yet under the First Amendment a sanction may not be had which would prevent the publication. The fear of such a suit or judgment must not be a sanction which would prevent publication.

Finally, on a story of public interest and concern, the court may not review the manner in which the news media obtains its information. See New York Times v. United States (1971) 403 U.S. 713, the "Pentagon Papers" case, where notwithstanding the documents had been stolen (see dissent of Chief Justice Burger at 748-752), it was held that under the First Amendment the press had the right to publish.

A leading case is that of Liberty Lobby v. Pearson (D.C.D.C. 1966) 261 Fed. Supp. 726, affirmed C.A.D.C. 1967, 390 Fed. 2d 489. There Drew Pearson, the columnist, illegally obtained certain information, but the court said at 261 Fed. Supp. 726 —

> The court is of the opinion that freedom of the press that is safeguarded by the constitution and which is one of the basic features of American institutions, is not limited to such information as is personally obtained by newspaper men by observation or from official statements, or in any other open way. The mere fact that a newspaper man obtained information in a clandestine fashion or in a surreptitious manner or because someone unguardedly and unwittingly reveals confidential information, or even through a breach of trust on the part of a trusted employee, does not give rise to an action for an injunction. *The courts may not review the manner in which a newspaper man obtains his information and may not restrain the publication of news merely because the person responsible for the publication obtained it in a manner that may perhaps be illegal or immoral.* It would be a far-reaching limitation on the freedom of the press if courts were endowed with power *to review the manner in which the press obtains its information* and could restrain the publication of news that is obtained in a way that the court does not approve. If such were the law, we would not have a free press; we would have a controlled press. Such, however, is not the law. (Italics added.)

Mr. Chief Justice Burger, at that time a judge of the Court of Appeals, spoke for a unanimous court in affirming at 390 F.2d 489.

See also Cullen v. Grove Press (D.C.N.Y. 1967) 276 F. Supp. 727; Time v. Geis (D.C.N.Y. 1968) 293 Fed. Supp. 130, where the court in headnote 9 relies on the "public interest in having the fullest information"; and Pearson v. Dodd (C.A.D.C. 1968) 410 F.2d 701, cert. den. 395 U.S. 947 (where, unlike here, there was a break in and taking of documents). We quote headnotes 8 and 9 —

> "Fact that newspaper columnist received copies of documents knowing that they had been removed without authorization from office of United States senator did not render columnist liable for invasion of privacy based on intrusion."

> "In analyzing claimed breach of privacy, injuries from intrusion and injuries from publication should be *kept clearly separate.*" (Italics added).

In order to causally connect the publication of a photograph and story of a matter of public interest there must be not only allegations but evidence of wrongdoing and malice which has not here been produced to oppose the affidavits of the defendant that it had no contact of any kind with the body or to show malice. See Kimple v. Riedel (Fla. D.C.A.2 1966) 133 So.2d 437. In the case at bar there is no evidence to counter the affidavit of the defendant or to support in any way the contention that there is a genuine issue of material fact which would bar the entry of a summary judgment.

Therefore, even considering that Count III states a cause of action, which the court seriously doubts, the court finds, in the case at bar, no genuine issue of material fact and that the defendant is entitled to a summary judgment as a matter of law.

Therefore, it is ordered that the defendant's motion for summary judgment as to Counts I and III of the plaintiff's complaint as amended is granted and the plaintiff shall take nothing by this action and the defendant shall go hence without day.