## NELSON v. GLOBE COMMUNICATIONS CORP.
### No. 76-4081-CA.
Circuit Court, Duval County.

January 7, 1977.

Charles Cook Howell, Jr., Jacksonville, for the plaintiff.

Harold B. Wahl of Wahl & Gabel, Jacksonville, for the defendant.

HAROLD R. CLARK, Circuit Judge.

*Summary judgment for defendant:* This cause came on to be heard after due notice on defendant's motion for summary judgment. Charles Cook Howell, Jr., Esquire, appeared for the plaintiff, and Harold B. Wahl, Esquire, appeared for the defendant.

Plaintiff sues for invasion of privacy. She alleges that the defendant published a magazine in December, 1975, *Detective Cases,* in which there was "published an account of the murder of plaintiff's husband Paul Nelson on August 27, 1974, in the Nelson Beacon Motel Apartments, Jacksonville Beach, Florida, by one Duane Elledge," that this article was an unwarranted invasion of plaintiff's privacy.

Plaintiff does not allege that the article was false or other than a true account of a matter of public interest and concern, that is, a series of murders by Elledge, including the murder of her husband.

Plaintiff originally sued also because of the erroneous picture of her husband which accompanied the article, but then amended to strike that claim, recognizing the well-settled law, as stated in the court's order of October 7, 1976 that plaintiff may not recover for invasion of the privacy of someone else, i.e., her deceased husband. See 32 Fla. Jur., *Torts,* §10, 1976 Supplement.

The defendant has taken plaintiff's deposition, plaintiff has produced numerous newspaper clippings about the Elledge murders in response to a Request to Produce, and defendant has filed affidavits of newspaper editors attaching numerous newspaper clippings about the murders perpetrated by Elledge, all about the same time he murdered plaintiff's husband, and where plaintiff traveled to Fort Lauderdale and testified in the Broward County murder case.

At pages 19, et seq. of her deposition, plaintiff told about her going to Fort Lauderdale to testify; of the tie-in between the Duval County and Broward County murders; of Elledge telling her at the time of the murder of her husband that he had already committed two murders at Hollywood, which she could verify by the newspaper accounts thereof; that at the time of her deposition "they have him [Elledge] on Death Row because of the electric chair, you know, they still got something about it in the Supreme Court."

As shown by plaintiff herself, this series of murders, including the murder of her husband, was obviously a matter of wide public interest. She testified there were news stories in Jacksonville and Jacksonville Beach, in Hollywood and Fort Lauderdale (as well

as in New York, the home of one of the victims), it was on television and radio, and the plaintiff actually kept the newspaper stories in her scrapbook and produced them at the request of defendant.

Nothing is better settled under Florida law than as stated by the Supreme Court of Florida in *Jacova v. Southern Radio and Television Co.* (Fla. 1955), 83 So.2d 34, at page 36 —

> And it is true that it is settled law in this state — as in other states in which an action for invasion of privacy is recognized — that as to these fields the right of privacy does not necessarily protect a person against the publication of his name or photograph in connection with the dissemination of legitimate news items or other matters of public interest. Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R.430; Id., 159 Fla. 31, 30 So.2d 635. Or, as stated by some courts, *"Where one, whether willingly or not, becomes an actor in an occurrence of public or general interest, he emerges from his seclusion, and it is not an invasion of his 'right of privacy' to publish his photograph with an account of such occurrence."* (Italics here and elsewhere added.)

The Supreme Court of Florida had theretofore held in *Cason v. Baskin* (Fla. 1947), 30 So.2d 635, 638 — ". . . the right of privacy does not prohibit any publication which is of public or general interest."

More recently, the First District Court of Appeal said in *Fletcher v. Florida Publishing Company* (Fla. DCA-1, 1975) 319 So.2d 100, (reversed on other grounds but affirmed by the Supreme Court on this point on October 7, 1976, 340 So.2d 914) at page 111 —

> Unquestionably the fire in appellee's home coupled with the tragic death of her daughter was of obvious legitimate public interest. *That the published matter complained of is of general public interest has always been considered a defense to a claim of invasion of privacy by publication.* Seeing that the matter published was of obvious legitimate public interest, the publication, per se, was not an invasion of privacy.

And *Stafford v. Hayes* (Fla. D.C.A.-1, 1976), 327 So.2d 871, upheld a *summary judgment* for the defendant television station, stating —

> Appellant, a public relations representative concerned with his client's legislative interests, visited the Hilton Hotel's bar in Tallahassee when the Capitol was evacuated after a bomb threat. He was there photographed by the appellee television crew who entered the bar with cameras and floodlights to examine and record the convivial alternative to work which had thus become available to state employees temporarily displaced from their desks. The lights hurt appellant's sensitive eyes and he was

offended and embarrassed by his appearance on television that evening. The trial court correctly determined on motion for summary judgment that the injury to appellant's eyes was not foreseeable by the television crew as a substantially certain result of their camera lights and, consequently, that appellant's claim of assault and battery was unfounded. Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972). The trial court also correctly determined that appellant was *an actor in a newsworthy occurrence of public interest* and that appellees were privileged to telcast pictures of the group which included appellant. Jacova v. Southern Radio and Tele. Co., 83 So.2d 34 (Fla. 1955).

At 62 Amer. Jur. 2d., *Privacy*, §24, it is stated —

> Can one who has achieved fame or notoriety, or been involved in a newsworthy event, regain his right "to be let alone" by the lapse of time? With few exceptions, the cases that have dealt with this question have held that once a person's activities become a matter of public interest, he cannot revert to a private status, or that, under the circumstances, the period of time involved was not sufficient to deprive the publisher of his privilege to report newsworthy events.

One of the cases quoted from and followed by the Florida court in *Jacova,* supra, was *Samuel v. Curtis Publishing Company* (D.C. Cal. 1954). We quote from page 39 of the *Jacova* opinion —

> The cases in which recovery has been denied are illustrated by Samuel v. Curtis Pub. Co., D.C. Cal. 1954, 122 F. Supp. 327, 328. There, the plaintiff was photographed while attempting to dissuade a young woman from committing suicide, and the photograph was published in the newspaper the day of the suicide. Two years later the photograph and plaintiff's name were used by defendant in connection with an article on suicides as an illustration of the various types of suicides. The court said that the photograph was newsworthy, and thus privileged, when first published, and the mere *passage of two years of time did not destroy this privilege.*

Plaintiff cites her right to privacy under F.S. 540.08. However, subsection F.S. 540.08(3) provides —

> 3. The provisions of this section shall not apply to:
>
> (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, *magazine, book,* news broadcast, or telecast or other news medium or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes;

Here, there was a feature story, not use of plaintiff's name for advertising purposes.

But in recent cases the United States Supreme Court has held that the First Amendment right of the people to know is not affected because commercial advertising purposes are involved. *New York Times v. Sullivan* (1964), 376 U.S. 254, itself involved an advertisement. In *Virginia State Board of Pharmacy v. Virginia Citizens Council* (May 24, 1976), 48 L.Ed. 2d. 346, the court again held squarely that "commercial advertising" was entitled to First Amendment protection. The whole theory of *no* invasion of privacy on a matter of public interest, and First Amendment protection, is the right of the people to know what goes on in matters of public interest such as a series of murders, as here.

The court holds, therefore, that in all material respects affecting plaintiff defendant published a true and accurate account on a matter of public interest, and that there was no invasion of plaintiff's privacy here for which a cause of action would lie.

Moreover, it appears from the record, including plaintiff's deposition, the affidavits, and the news stories, that the three murders, i.e., that of plaintiff's husband in Duval County and the other two in Broward County by the same man, were tied together as a matter of public interest. Not only were they committed by the same man within a week of each other, the plaintiff traveled to Fort Lauderdale to testify in the Broward County murder case, and it was partially because of her testimony that Elledge was sentenced to death in the Fort Lauderdale case, that murder coming on top of the murder of her husband. There was wide publicity in Florida and New York, and probably elsewhere, as the wire services sent out stories on the series of murders.

The appeal from Elledge's death sentence in the Broward County case is still pending in the Supreme Court of Florida and thus continues to be a matter of public interest. It has been stated that if the Supreme Court of Florida affirms the death sentence, Elledge will take the case to the Supreme Court of the United States, which indicates that the matter will continue for some time to be a matter of current and ongoing public interest.

While plaintiff attacked defendant's answer, the court has upheld as legally sufficient defendant's first, seventh and eighth defenses setting up that there was a true and correct publication on a matter of public or general interest, and its fourth defense setting up the protection under the state and federal constitutions of a true and correct publication on a matter of public or general interest.

On the undisputed record, therefore, including plaintiff's own deposition, the court finds that there is no genuine issue as to any

material fact, and that defendant is entitled to summary judgment as a matter of law.

It is, therefore, considered, ordered and adjudged that plaintiff take nothing by her suit, that defendant go hence without day, and that defendant do have and recover of and from plaintiff its costs to be hereafter taxed by the court.