**CRAIG v. MOORE, et al.**
No. 78-3204-CA.
Circuit Court, Duval County.
August 30, 1978.

David U. Tumin and William M. Tomlinson, both of Jacksonville, for the plaintiff.

Harold B. Wahl and George D. Gabel, Jr., both of Jacksonville, for the defendants.

THOMAS D. OAKLEY, Circuit Judge.

*Order granting summary judgment and summary judgment:* This cause came on to be heard on defendants' motion for summary judgment in this libel suit, supported by the pleadings, the depositions of plaintiff and defendants, and various affidavits.

Paragraph 7(A) of the complaint alleges —

> "(A)  On or about September 28, 1977, at the peak of a political campaign wherein the plaintiff was running for reelection as Mayor of the City of Jacksonville Beach, Florida, the defendant, Allen Moore, as News Director/Commentator of Radio Station WAPE-690, broadcast at 6:00 a.m. a news story about 'beach cleanliness,' concluding therein as follows:
>
>> 'Well, what else can we expect from Mayor Guy Craig?  This deceptive individual who quite often misleads, if not blatantly lies to reporters from this radio station.  What often*(sic) could you expect from him?  Can you believe people elected him to begin with?  Can you believe people will probably reelect him'
>> *"else"

It is clear that at a time of a political election when plaintiff was seeking reelection as mayor, the defendants expressed their opinions or ideas as to the fitness of the plaintiff for public office and why he should not be reelected.

When the mayor's deposition was taken, both he and his counsel conceded, as they necessarily must have done, that the language sued on was an editorial commentary.  It was clearly an expression of *opinion,* as the mayor conceded at pages 27 and 40.

There has been no showing that this expression of opinion was a calculated falsehood.  See *Curtis v. Butts* (1967) 388 U. S. 130, at 153, where the court said that the burden was on the plaintiff to prove "in effect, a calculated falsehood."  There is no evidence of any kind, let alone evidence of convincing clarity (as required by *New York Times v. Sullivan* (1964) 376 U. S. 254, and succeeding cases) that defendants made this statement knowing it to be

false or having serious doubts as to its truth with intent to harm through falsehood. On the other hand, there is no dispute but that the defendant Moore, as news director of the station, had reports from his reporters, and others, that the mayor could not be relied upon and that they could not trust his statements; that the publication was merely an honest expression of opinion based upon the experiences with the mayor.

As stated in *Gertz v. Welch* (1974) 418 U. S. 323 at 344 and 345 —

> An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties. As the court pointed out in Garrison v. Louisiana, 379 U.S. at 77, 13 L.Ed 2d 125, 85 S.Ct. 209, the public's interest extends to "anything which might touch on an official's fitness for office . . ." Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.

> \*　　\*　　\*

> . . . the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. No such assumption is justified with respect to a private individual. He has not accepted public office or assumed an "influential role in ordering society." Curtis Publishing Co. v. Butts, supra, at 164, 18 L.Ed. 2d 1094 (Warren, C.J., concurring in the result.) (Italics here and elsewhere added unless otherwise indicated.)

Further it is stated at pages 339 and 340 —

> Under the First Amendment *there is no such thing as a false idea.* However pernicious an opinion may seem, we depend for its correction not on the consciences of judges and juries but on the competition of other ideas.

For plaintiff to recover for libel he must show "by proof of convincing clarity that the publication was false and that the defendants either knew it was false or had serious doubts [reckless disregard] as to its truth." See *New York Times,* supra, at 286; *St. Amant v. Thompson* (1968) 390 U. S. at 731; and *Beckley v. Hanks* (1967) 389 U. S. at 83.

The burden is on the plaintiff to prove in effect "a calculated falsehood." *Curtis,* supra, at 153.

Defendant is not required to have even "a reasonable belief" in the truth of the publication. *Garrison v. Louisiana* (1964) 379 U. S. 64 at 78 and 79.

A case strikingly similar to this one is that of *Palm Beach Newspapers v. Early* (Fla. D.C.A. 4, 1976) 334 So.2d 50, cert. den., 354 So2d 351, where the trial jury gave a million dollar verdict to the plaintiff county school superintendent after the newspaper had run several hundred articles, which was reversed completely on appeal.

As stated on page 51 of the opinion —

> . . . Both papers, through their respective editorial and news staffs, embarked upon a *concerted campaign admittedly designed to bring about the removal of Mr. Early* from his elected position. In pursuance of this objective, the defendants published over a period of approximately fourteen months several hundred news articles and editorials, all of which were generally hostile to or critical of Early and many of which were of a *defamatory* nature.

See further on page 52 —

> Plaintiff/appellee complained that the defendants characterized his tenure in office as unsuccessful, and stated that he was unfit to hold the office of Superintendent of Public Instruction because of his ineptness, incompetence and indecisiveness. All of these charges were clearly matters of *opinion*, not statements of fact, and were proper subject of comment on a public official's fitness for office.

We quote further on pages 53 and 54 —

> Most of the articles and cartoons would fall in the category of what the courts have chosen to call *"rhetorical hyperbole"* or "the conventional give and take in our economic and political controversies." In this category were statements to the effect that public confidence in the school system was eroding, that the public was clamoring for new leadership in the school system, that plaintiff enjoyed TV and news exposure, that plaintiff had not, prior to his election, held an administrative position in the school system higher than acting principal, and such cartoons as depicted the school buildings falling down or crumbling under plaintiff's leadership, as typical examples.
>
> We do not here attempt to discuss or classify more than a smattering of the *several hundred derogatory articles and cartoons* which defendants published of and concerning plaintiff. Suffice it to say that while *most of the articles and cartoons can fairly be described as slanted, mean, vicious, and substantially below the level of objectivity that one would expect of responsible jouralism, there is no evidence called to our attention which clearly and convincingly demonstrates that a single one of the articles was a false statement of fact made with actual malice as defined in the New York Times case.* We thus conclude that the defendants' motion for a directed verdict at the close of the evidence should have been granted by the trial court. The judgment is therefore reversed and the cause remanded with directions to enter a judgment in favor of the defendants.

The *Early* decision was not only upheld by the Florida Supreme Court when it denied certiorari, but is supported by the decisions of the United States Supreme Court. In *Greenbelt v. Bresler* (1970) 398 U. S. 6, at 11, 14 and 15, charges of "blackmail" were held insufficient; in *Old Dominion Letter Carriers v. Austin* (1974) 418 U. S. 264, the charge of being a "traitor" was held insufficient; in *Curtis v. Birdsong* (C.A.5 1966) 364 F.2d 344, at 348, the charge of being a "bastard" was held insufficient; and in *Time v. Johnston* (C.A.4 1971) 448 F.2d 378, at 384, the charge of being "destroyed" was held insufficient; the courts in all those cases holding the charges were merely "rhetorical hyperbole" and the "conventional give and take in our economic and political controversies." See also *Bennett v. Transamerican Press* (U.S.D.C. Iowa 1969) 298 F.Supp. 1013, where a charge against a legislator that he was a "liar" was held to be merely the expression of the opinion of the writer, and not libelous under the *New York Times* standard.

In addition to the *Bennett* case where the court held that the word "liar" was not actionable, the Illinois court has likewise held the word "liar" would be non-actionable in an appropriate context such as here. See *Wade v. Sterling Gazette Co.* (Third District, 1965) 56 Ill. App. 2d 101.

Other cases have held non-actionable the words "lousy agent," *Valentine v. North American Co.* (Ill. Third District, 1973) 16 Ill. App. 3d 227; "scab" and "traitor," *Old Dominion Letter Carriers v. Austin* (1974) 418 U.S. 264; "dishonorable and deluded," *Delis v. Sepsis,* (Ill. App., 1972) 9 Ill. App. 3d 317; "fixes parking tickets," (Ill. App., 1967), *Kamsler v. Chicago American Publishing Co.,* 82 Ill. App. 2d 86; "nut," "mishuginer" and "screwball," *Skolnick v. Nudelman,* (Ill. App., 1968), 95 Ill. App. 2d 293, 237 N.E. 2d 804; "completely loses his cool, turns purpose *** Prussian dictator," (Ill. App., 1973) *Von Solbrig v. Licata,* 15 Ill. App. 3d 1025, 305 N.E. 2d 252; and "asshole," *McGuire v. Jankiewicz,* (Ill. App., 1972), 8 App. 3d 319, 290 N.E. 2d 675.

The courts have held that these expressions "may be characterized as extreme, bitter, and may hold up plaintiffs to execration, yet are not libelous per se."

In *Cohen v. New York Times (1912), 153 App. Div. 242, 138 N.Y.S. 2d 206,* someone, friend or foe, inserted an advertisement in the New York Times that Cohen had died on May 6. Cohen sued the newspaper. His complaint was dismissed, the court saying at page 246 —

"Such publication may be unpleasant; it may annoy or irk the subject thereof, it may subject him to joke or jest or

banter from those who knew him, even to the extent of affecting his feelings but this is not enough."

Forty years later a similar joke was played on John Cardiff. The announcement went a step further and stated that the plaintiff was "lying in state at 566 4th Avenue" which was the address of his saloon. Still the court held there was no libel, *Cardiff v. Brooklyn Eagle Inc.*, (1947), 190 Misc. 730, 733, 75 N.Y.S. 222, holding —

"At its worst the publication might cause some amusement to the plaintiff's friends. But it is difficult to see where his reputation would be impaired in the slightest degree and the law of defamation is concerned only with injuries thereto."

In *Kimmerle v. New York Evening Journal, Inc.*, (1933) 262 N.Y. 99, the plaintiff was described as being courted by a murderer who had left "a dirty, blood-stained record behind" him in Chicago and who was later hung. In dismissing the complaint, the Court of Appeals said (262 N.Y. at 103) —

"Embarrassment and discomfort no doubt came to her from the publication, as they would to any decent woman under like circumstances. Her own reaction, however, has no bearing on her reputation . . . We are unable to find anything in this article which could appreciably injure the plaintiff's reputation."

Nor is it libelous to charge an individual with a single mistake or of acting foolishly on a single occasion.

This principle is well illustrated by *Twiggar v. Ossining Printing & Publishing Co.* (1914), 161 App. Div. 718, 146 N.Y.S. 429, where the articles said that the plaintiff, a dentist, had removed the root of a tooth so unskillfully that three other teeth were exposed, and a cavity in the roof of the patient's mouth and a disease of the gums and jaws set in. The court held that infallibility is not a human trait and even the most skillful may make a mistake on a single occasion, so that the assertion of a single act of negligence was not libelous.

See also *Battersby v. Collier*, (1898) 34 App. Div. 347, 54 N.Y.S. 363; *Arnold Bernhard & Co., Inc. v. Finance Publishing Corp.*, (1968), 32 A.D. 2d 516, 298 N.Y.S. 2d 740; *Hirschhorn v. Group Health Ins.*, (1958), 13 Misc. 2d 338, 175 N.Y.S. 2d 775; *Cowan v. Time Inc.*, (1963) 41 Misc. 2d 198, 245 N.Y.S. 2d 723.

One of the strongest cases is the decision of the United States Court of Appeals for the 2nd Circuit in *Hotchner v. Castillo-Puche* (1977), 551 Fed. 2d 910. There, the author described the plaintiff "as a 'manipulator,' a 'toady,' a 'hypocrite' and 'exploiter'

of Hemingway's reputation, who was never 'open and above board'." The author also said about plaintiff, "I don't really trust him."

The lower court entered up judgment for the plaintiff which was *reversed* by the Court of Appeals, and the United States Supreme Court denied certiorari at ...... U.S. ....... The key point of the opinion is found at page 913 —

"A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be. See *Gertz v. Robert Welch*, 418 U.S. at 339-40; *Buckley v. Littell*, 539 Fed. 2d 882 at 893."

The *Hotchner* case is squarely in point here. The defendants merely express their opinion of Mayor Craig and there can be no recovery "however unreasonable the opinion or vituperous the expressing of it may be."

See also *Edwards v. National Audobon Society*, USCA 2 (1977) 556 Fed. 2d 113, cert. den. ...... U.S. ......; and *Rinaldi v. Holt*, (N.Y. 1977) 42 N.Y. 2d, 396, 2 Med. L. Rptr. 2169. There, New York's highest court upheld summary judgment against the plaintiff public official and said at 2 Med. L. Rptr. 2173 —

The expression of *opinion, even in the form of pejorative rhetoric,* relating to fitness for judicial office or to performance while in judicial office, is safeguarded. (Cf., Old Dominion Branch No. 496, *Assn. of Letter Carriers v. Austin,* 418 U.S. 264, 283-284.) Erroneous opinions are inevitably made in free debate but even the erroneous opinion must be protected so that debate on public issues may remain robust and unfettered and concerned individuals may have the necessary freedom to speak their conscience. (See *New York Times Co. v. Sullivan,* 376 US 254, 271-272, supra.) Plaintiff may not recover from defendants for simply expressing their opinion of his judicial performance, *no matter how unreasonable, extreme or erroneous* these opinions might be. (See *Hotchner v. Castillo-Puche,* 551 F.2d 910, 912.)

The publisher had accused the plaintiff, Judge Rinaldi, of being incompetent, stated that he should be removed from office, and that he was probably corrupt. Nonetheless, the court held defendants had the right to have and express their opinion.

What is expressed in an editorial opinion like that here is a matter which is beyond the reach of libel law. The plaintiff who claims he has been libeled by another's published opinion of him, if he is a public official, cannot, consistent with the First Amendment, sue the publisher for having expressed his opinion. Such an action constitutes an "impermissible intrusion into the function of editors," *Miami Herald Publishing Co. v. Tornillo,* (1974), 418

U.S. 241, 258. In *Tornillo,* the Supreme Court invalidated a Florida statute granting a political candidate equal space for reply in newspapers which were editorially critical of him, saying —

> The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and the treatment of public issues and public officials — whether fair or unfair — constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with the First Amendment guarantees of a free press as they have evolved to this time. 418 U.S. at 258.

Cf. *Columbia Broadcasting System, Inc. v. Democratic National Committee,* (1973) 412 U.S. 94 (broadcaster has right to refuse paid editorial advertisements; where the court said "For better or worse, editing is what editors are for; and editing is selection and choice of material." 412 U.S. at 124.)

Beyond their specific holdings, *Tornillo* and *CBS* serve as a reminder that any "intrusion into the function of editors" cannot be permitted under the First Amendment; to forget that reminder is to run the risk that "uninhibited, robust and wide-open" debate, *New York Times v. Sullivan,* (1964) 376 U.S. 254, 271, will be lost, and that the expression of personal opinions and views which is fundamental to vigorous debate will be stifled.

The editorial in question here is an expression of opinion for which the plaintiff cannot constitutionally recover in a libel action. Accordingly, the defendants' motion for summary judgment must be sustained.

The burden is on plaintiff to prove his case by "clear and convincing" evidence. *Gertz v. Robert Welch, Inc.,* (1974) 418 U.S. 323, 342; *Beckley Newspapers Corp. v. Hanks,* (1967) 389 U.S. 81, 83; *New York Times v. Sullivan,* (1964) 376 U.S. 254, 285-286. Accordingly, the plaintiff must show, when challenged by the motion for summary judgment filed by the defendants, that the evidence he will introduce at trial will establish constitutional malice with the convincing clarity required of him. *Fadell v. Minneapolis Star & Tribune Co., Inc.* (U.S.C.A. 7 1977) 557 F.2d 107, cert. den. (1977) ...... U.S. ...... 98 S. Ct. 508, aff'g (N.D. Ind. 1976) 425 F. Supp. 1075; *Carson v. Allied News Co.,* (U.S.C.A. 7 1976) 529 F.2d 206; *Bon Air Hotel, Inc. v. Time, Inc.,* (U.S.C.A. 5 1970) 426 F.2d 858; *Wasserman v. Time, Inc.* (U.S.C.A.D.C. 1970) 424 F.2d 920 (Wright, J., concurring); *United Medical Laboratories v. Columbia Broadcasting System* (U.S.C.A. 9 1968) 404 F.2d 706; *Washington Post Co. v. Keogh* (U.S.D.C. 1966) 365 F.2d 965; *Hutchinson v. Proxmire,* W.D. Wis. 1977) 431 F. Supp. 1311, affirmed (U.S.C.A. 7 1978) ...... F.2d ......, 4 Med.

L. Rptr. 1016 (involving Senator Proxmire's "opinion" of plaintiff Hutchinson); *Wolston v. Reader's Digest Assn., Inc.,* (D.C.D.C. 1977) 429 F. Supp. 167; *Oliver v. Village Voice, Inc.,* (S.D.N.Y. 1976) 417 F. Supp. 235; *Raganov v. Time, Inc.,* (M.D. Fla. 1969) 302 F. Supp. 1005; *Bandelin v. Pietsch,* (1977) 98 Idaho 337, 563 P.2d 396; *Johnson v. Capital City Press,* (La. 1977) 346 So.2d 280; *Adams v. Frontier Broadcasting Co.,* (Wyo. 1976) 555 P.2d 556; *O'Brien v. Tribune Publishing Co.,* (1972) 7 Wash. App. 107, 499 P.2d 24.

The court in *Bandelin v. Pietsch,* supra, said as follows in upholding summary judgment at page 399 —

> When a defendant's communications are constitutionally privileged [under *New York Times*], a plaintiff cannot prevail at trial unless he establishes malice with convincing clarity. This is the standard against which the court must examine the evidence *on motion for summary judgment* because this is the standard that determines materiality of disputed questions of fact. Unless there is evidence which if believed by a jury would establish malice clearly and convincingly, a defendant is entitled to summary judgment. Disputed issues of fact that if resolved in favor of the plaintiff would still fall short of establishing malice with convincing clarity are not material.

The plaintiff cannot resist the defendants' motion for summary judgment merely by arguing that there is an issue for the jury as to malice, unless he makes come specific showing from which malice may definitely be inferred. *Thompson v. Evening Star Newspaper Co.,* (1968) 129 U.S. App.D.C. 299, 394 F.2d 774; *Johnson v. Capital City Press,* (La. 1977) 346 So.2d 820. It is not enough for the plaintiff to allege that a defamatory falsehood has been published, or that the defendant acted carelessly; absent proof with "convincing clarity," summary judgment must be granted to the defendants. *Fadell v. Minneapolis Star & Tribune Co., Inc.* (U.S.C.A.7 1977) 557 F.2d 107, cert. den. (1977) ...... U.S. ......, 98 SCt. 508, aff'g (N.D. Ind. 1976) 425 F.Supp. 1075.

To require the defendants to incur the further expense of a trial in this matter, where on this record there is no proof, let alone clear and convincing proof, of constitutional malice on their part, would be wholly contrary to the command of the *New York Times v. Sullivan* principle. *In Fadell v. Minneapolis Star and Tribune Co., Inc.,* supra, the district court stated —

> It is in order to prevent the "chilling effect" of such burdens on the press, and to facilitate free debate on issues of public concern that the courts have more and more taken the position that the First Amendment issues which arise out of libel suits should *be disposed of on summary judgment* where a public official plaintiff has failed to establish "actual malice" . . .

In *Washington Post Co. v. Keogh,* [supra], the court stated: . . .

> "In the First Amendment area, *summary proccedures are even more essential.* For the stake here, if harrassment succeeds, is free debate. One of the purposes of the [*New York Times v. Sullivan*] principle, in addition to protecting persons from being cast in damages in libel suits filed by public officials, is to prevent persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct of their government. The threat of being put to the defense of a lawsuit brought by a public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself especially to the advocates of unpopular causes."

See also *Guitar v. Westinghouse Electric Corp.,* supra, 396 F.Supp. at 1053 — *"Summary judgment is the rule, and not the exception, in defamation cases"* (emphasis in original); *Grant v. Esquire, Inc.,* 367 F. Supp. 876, 881 (S.D.N.Y. 1973) — public figure plaintiff must *"make a far more persuasive showing than required of an ordinary litigant in order to defeat a defense motion for summary judgment."*

In *Jenoff v. Hearst* (U.S.D.C. Md. 1978) ...... F.S. ......, 4 Med. L.Rptr. 1023 at 1028, as late as June 27, 1978, the court held, citing authorities —

> Of course, where the actual malice standard of *New York Times v. Sullivan* is applicable, the *granting of summary judgment is the rule, rather than the exception* because of the difficulty encountered by a plaintiff in showing the existence of actual malice. *Anderson v. Stanco Sports Library,* 542 F.2d 638, 640 (4th Cir. 1976); *Time, Inc. v. Johnston,* 448 F.378 (4th Cir. 1971) at 383-84.

There are discussed hereinafter the Florida cases, including many from Duval County, upholding the right of the media defendant to summary judgment in situations like that here.

Of interest is the decision of the United States Court of Appeals for the Second Circuit in *Lando v. Herbert* (1977) 568 F.2d 974, which went so far as to prevent pretrial discovery or disclosure of the editorial process of the press in deciding what to publish.

Plaintiff contends that he is entitled to recover in an individual capacity even if he cannot recover as mayor. Unfortunately for plaintiff, this contention has been squarely rejected in both *Gertz,* supra, and *Garrison,* supra, where the court held that "the public's interest extends to anything which might touch on an official's fitness for office and that few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though those characteristics may affect the official's

private character," and defendants' First Amendment protection "is not rendered an inapplicable remedy because an individual's private reputation, as well as his public reputation, is harmed." See 379 U.S. at 77.

In sum, this court holds that here the news media defendants, as they had a right to do, expressed their opinion of plaintiff's fitness for office and of the way in which he handled that office and his dealings with the press and public — that there is no showing under the *New York Times* cases which permit recovery.

Under the circumstances, it is the court's duty to enter up summary judgment to avoid the expense, delay, and hazard of a trial and to protect the First Amendment rights of the news media. See Bon Aire Hotel v. Time (C.A.5 1970) 426 F.2d 858, 863-865, pointing out why summary judgment is required. See also *Washington Post v. Keogh* (U.S.C.A. D.C. 1966) 365 F.2d 965 at 968, cert .den., 385 U.S. 1011, holding that "in the First Amendment area summary procedures are even more essential."

*Bishop v. Wometco* (Fla. D.C.A.3 1970) 235 So.2d 759 (cert. den. at 240 So.2d 813) upheld summary judgment and quotes many of the same authorities cited in *Bon Aire*. It also calls attention to the fact that the court in *White v. Fletcher* (Fla. 1956) 90 So.2d 129, affirmed summary libel judgment (for defendant) and "anticipated the later decision in *New York Times.*"

Among the other Florida cases upholding summary judgments for the news media in such situations (and where the showing for the plaintiff was more and that for the media was less, if anything, than here) are *Hill v. Lakeland Ledger* (Fla. D.C.A.2 1970) 231 So.2d 254; *Amos v. Florida Publishing Company* (Fla. CC. Duval 1964) 23 Fla. Supp. 169; *Carroll v. Florida Publishing Company* (Fla. C.C. Duval 1965) 25 Fla. Supp. 5; *West v. Florida Publishing Company* (Fla. C.C. Duval 1968) 30 Fla. Supp. 1; *LaBruzo v. Miami Herald* (Fla. C.C. Dade 1971) 36 Fla. Supp. 1; *Sullivan v. Florida Publishing Company* (Fla C.C. Duval 1966) 26 Fla. Supp. 57; *Merritt-Chapman v. Associated Press* (Fla. C.C. Dade 1970) 33 Fla. Supp. 102; *MacGregor v. Miami Herald* (Fla. D.C.A.2 1960) 119 So.2d 85; *Walker v. Times Publishing Co.* (C.C. Pinellas 1965) 26 Fla. Supp. 90; *Menendez v. Key West Newspaper Corp.* (Fla. D.C.A.3 1974) 293 So.2d 751; and *Nelson v. Globe Communications* (C.C. Duval 1977) 45 Fla. Supp. 48.

See also the decision of the Supreme Court of Florida in *Florida Publishing Company v. Fletcher* (1976) 340 So.2d 914, cert. den. (5-25-77) ...... U.S. ......, where the Supreme Court of Florida reversed the District Court of Appeal and upheld summary judgment entered by the Duval County Circuit Court for the news-

paper at 40 Fla. Supp. 1; and *Ocala Star Banner v. Damron* (1971) 401 U.S. 295, where the United States Supreme Court reversed a libel judgment for the plaintiff which the District Court of Appeal and the Florida Supreme Court had refused to set aside. Thereafter when the case came back, summary judgment was entered for the defendant by the same judge who had upheld the original judgment for the plaintiff, and the First District Court of Appeal unanimously affirmed at 263 So.2d 291, stating at page 292 —

> "Apparently the Federal Supreme Court has ruled that a public figure is without recourse when the news media, without proof of 'express malice,' of 'convincing clarity' chooses to publish defamatory falsehoods about such public figure. Thus we are compelled to affirm the [summary] judgment appealed."

As late as April 6, 1978, the Supreme Court of the United States again affirmed freedom of speech and of the press granted by the constitution. We quote from *First National Bank of Boston v. Bellotti* (April 26, 1978), ...... U.S. ......, 55 L.Ed.2d 707, at 717, 718 —

> "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. . . . Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." Thornhill v. Alabama, 310 U.S. 88, 101-102, 84 L.Ed. 1093, 60 S.Ct. 736 (1940).

> \*     \*     \*     \*

> As the Court said in Mills v. Alabama, 384 U.S. 214, 218, 16 L.Ed.2d 484, 86 S.Ct. 1434 (1966), "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."

A very recent case is the decision of the United States Court of Appeals for the Third Circuit in *Pierce v. Capital Cities Communications* (April 12, 1978) 576 F.2d 495, 3 Media Law Reporter 2259, where the court under the First Amendment upheld summary judgment and where the Media Law Reporter headnote reads —

> CA 3: Federal district court did not err in granting summary judgment for television station in libel action brought by former chairman of Delaware River Port Authority for station's broadcast of program concerning port authority, based on evidence demonstrating that broadcast's only false statement was "honest utterance, even if inaccurate," on evi-

dence showing that certain other statements challenged as libelous would be construed by reasonable viewers as hyperbole, and on finding that station's failure to positively rule out possibility that plaintiff used insider information did not constitute actual malice.

In *Wolston v. Reader's Digest* (U.S.C.A. - D.C. 1978) ...... F.2d ......, 3 Media Law Reporter 2334, the court upheld summary judgment for the publisher, and affirmed the trial court in holding that whether plaintiff was a public figure was a question of law for the court. We quote from page 2335 —

PUBLIC OR PRIVATE FIGURE — A QUESTION OF LAW

The District Court held that whether Wolston was a public figure was a question of law, to be decided by the court. Wolston contends that in this the court erred because "this complex factual question . . . whether plaintiff is a public figure is properly a jury matter." We think the District Court was right. In Rosenblatt v. Baer, 383 U.S. 75, 88 [Med.L. Rptr. 1558] (1966) the Court remarked that "as is the case with questions of privilege generally, it is for the trial judge in the first instance to determine whether the proofs show respondent to be a 'public official'." We think the same rule should be applied when the question is whether a plaintiff is a "public figure." The Court observed "[s]uch a course will both lessen the possibility that a jury will use the cloak of a general verdict to punish unpopular ideas or speakers, and assure an appellate court the record and findings required for review of constitutional decisions." 383 U.S. 88 n.15. We add that a jury of laymen is hardly qualified to apply the nice and sometimes intricate distinctions between public and private figures which have been developed in the cases following New York Times Co. v. Sullivan, 376 U.S. 254 [1 Med.L.Rptr.1527] (1964).

The court further said at page 2339 —

We reject the argument that Barron was reckless because he failed to make inquiry to verify the statements in the F.B.I. report. *Failure to investigate does not itself establish bad faith or recklessness.* New York Times Co. v. Sullivan, 376 U.S. 254, 287-88 [1 Med.L. Rptr. 1527] (1964); St. Amant v. Thompson, 390 U.S. 727, 733 [1 Med.L.Rptr. 1586] (1968).

Construing the case here most strongly against the defendants there is no basis on which a jury could find proof of convincing clarity of calculated falsehood. The decisions of the United States Supreme Court and of the Florida courts make it clear that summary judgment is the remedy in a situation of this kind.

It is accordingly ordered that the plaintiff Craig take nothing by his suit, that each of the defendants go hence without day, and that each of the defendants have and recover its or his costs from the plaintiff, such costs to be hereafter taxed by the court.